**Cleveland WILLIAMS, Appellant,**

v.

**K.S. "Bud" ADAMS, Jr., et al., Appellees.**

**No. C14–85–00084–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 27, 1985.

Rehearing Denied Aug. 1, 1985.

William R. Eckhardt, Vinson & Elkins, Houston, for appellant.

Donald E. Kilpatrick, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This appeal is based on an original petition for bill of review filed by appellant requesting that the final judgment of August 5, 1970, styled *Cleveland Williams v. K.S. "Bud" Adams, et al.,* be set aside. In five points of error appellant takes exception to the granting of appellee's Motion for Summary Judgment and appeals. Appellant asserts in his first four points of error that the trial court erred in granting appellee's Motion for Summary Judgment because a fact issue exists as to whether appellee fraudulently prevented appellant from asserting a meritorious defense in the prior suit, and that this error violates the objective of the rules of civil procedure. Tex.R.Civ.P. 1. In the fifth point of error, appellant attacks the sufficiency of the motion itself in that no affidavits are attached to it. We affirm.

The foundation for this cause of action and the previous law suits between these parties was the November 14, 1966, heavyweight championship fight between Muhammad Ali and Cleveland Williams. Appellee and Hugh S. Benbow had been co-managers of appellant for about four years before the fight. Benbow was the active manager in charge of training appellant, while appellee's role as manager was largely passive. In late November, 1964, appellant was shot by a highway patrolman and was hospitalized for nearly four and half months. Appellee paid appellant's medical bills and made other cash advances for living expenses with the understanding that he would be repaid from appellant's portion of the proceeds of the championship fight. Appellee withdrew as manager of appellant nearly ten months before the championship bout, but retained a right to one-third of the manager's portion of the purse. While appellant was training at Hugh Benbow's ranch for the upcoming fight, Mr. Benbow refused to allow any contact between appellee and appellant. Because of this breakdown in communications, appellee feared that he would not be repaid. Immediately before the champion-

ship fight of November 14, 1966, appellee filed a writ of garnishment to seize appellant's portion of the live gate proceeds.

After the fight, the promoter, Earl Gilliam, d/b/a Texas Boxing Enterprises, filed a petition of interpleader and paid the live gate proceeds into the registry of the 164th Judicial District Court of Harris County. A written settlement agreement, dated November 23, 1966, executed by appellant, his wife, Hugh Benbow and appellee, directed how the live gate proceeds were to be divided among the parties and further stipulated how the ancillary gate proceeds, which had not yet been received, were to be divided. Each of the parties to the settlement further agreed to "fully release, acquit and forever discharge the other parties hereto of and from any and all claims, demands, damages, suits, rights or causes of action he has or may have against the other parties arising or to arise out of the subject matter of this agreement." Based upon the written agreement, the trial court entered a judgment, dated November 29, 1966, which divided the monies in the court's registry. After deductions for partial repayments to appellee, appellant received $7,471.00. No appeal was taken from that judgment, and it became final on or about December 30, 1966. Because the ancillary gate receipts were less than any of the parties anticipated, appellant's share, after deducting taxes, was insufficient to pay the balance owing to appellee.

On February 3, 1967, appellant filed another cause of action against appellee, again alleging the same issues that were involved in the interpleader suit, namely the unfair division of profits derived from the championship fight. In an effort to settle the issue once and for all, appellee issued a check, dated July 16, 1970, in the amount of $2000.00, payable to appellant and his attorneys, Ducoff and Chanon. The check was issued in full and final settlement of the lawsuit and was endorsed and deposited by appellant's attorneys. Appellant denied endorsing the check; however, what purports to be appellant's signature is on the reverse of the check.

While there may be doubt as to the authenticity of appellant's endorsement, there is no doubt that his attorneys endorsed and deposited the check.

■ Besides the check, a separate release was executed by appellant for and on behalf of appellee. Although the original has been lost, a conformed copy was provided by appellee's attorneys and indicates that appellant signed it before a notary public on July 23, 1970, in Hillsborough County, Florida. Appellant admitted in his deposition that he signed a document in July, 1970, before a notary public in Hillsborough County, Florida; however, he denied reading the document and denied any knowledge that it was a release. A person who signs a contract is presumed to know its contents; and, absent a finding of fraud, his failure to read it will not discharge his obligations. *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392 (Tex.1982); *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962). There is no evidence of fraud, actual or constructive, on the part of appellee.

Based on the joint application of the parties, the trial court entered a judgment on August 5, 1970, that all claims and causes of actions between the parties had been compromised and settled, and the consideration therefor had been paid in full. This judgment was approved as to substance and form by appellant's attorney and by appellee's attorney. No appeal was taken, and it became final on or about September 5, 1970.

■ In his current Bill of Review, filed October 29, 1981, appellant attempts to relitigate the same issues that were disposed of in the prior lawsuits. Although a bill of review is a proceeding in equity, a litigant must allege and prove certain matters before he can successfully invoke the extraordinary relief of setting aside a final judgment. The case of *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996 (1950), established the requirements for a petition on a bill of review. The petitioner must allege and prove:

1) a meritorious defense to the cause of action alleged to support the judgment,

(2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own.

*Alexander v. Hagedorn,* 226 S.W.2d at 998. Moreover, only extrinsic fraud will entitle petitioner to the relief contemplated by a bill of review. *Montgomery v. Kennedy,* 669 S.W.2d 309, 312 (Tex.1984). The petitioner must further show that he has not been negligent in failing to avail himself of any means to set aside or arrest or vacate the judgment. *Callaway v. Elliott,* 440 S.W.2d 99, 102 (Tex.Civ.App.—Tyler 1969, writ dism'd). It is fundamental that some finality be accorded to judgments, and courts of equity scrutinize bills of review "with extreme jealously." *Alexander v. Hagedorn,* 226 S.W.2d at 998. The grounds on which a petition for bill of review will be granted are therefore narrow and restricted, and the rules cannot be relaxed merely because it appears that an injustice has been done. *Id.*

■ Appellant in the case at bar has failed to prove that he was prevented from making a meritorious defense by the extrinsic fraud of appellee. Extrinsic fraud warranting the setting aside of a final judgment has been defined as "that fraud which denies a losing litigant the opportunity to fully litigate his rights or defenses upon trial." *Montgomery v. Kennedy,* 669 S.W.2d at 312. No such denial has occurred in this case. Appellant has had his days in court and was represented by competent counsel on both occasions. Although there are allegations that appellant relied on certain statements made by appellee, there is no *proof* that appellee did or failed to do anything that prevented appellant from fully litigating his rights at the two prior causes of action. Appellant's allegations of the alleged misrepresentations of appellee concerning what appellant was to receive from the fight do not constitute extrinsic fraud; if they can be classified as fraud at all, they are intrinsic fraud and, as such, will not set aside a final judgment on a bill of review. *Alexander v. Hagedorn,* 226 S.W.2d at 1001.

Even if we were to find *arguendo* that appellant was prevented by the extrinsic fraud of appellee from proving a meritorious cause of action in the prior cases, appellant would nevertheless not be entitled to set aside the judgment because he was not without fault on his own part. Appellant has waited over eleven years from the rendition of the August 5, 1970, judgment and nearly fifteen years from the rendition of the November 20, 1966, judgment to file his petition for bill of review. Such a long delay must be explained, and it must clearly appear that the delay was not the result of lack of diligence on the part of the petitioner. *Callaway v. Elliott*, 440 S.W.2d at 103. Notwithstanding the education, background and the trusting and innocent nature of appellant, he has failed to show due diligence in pursuing this cause of action by waiting so long to file his petition. The only excuse he gives for the delay is that he was waiting for his lawyer to get in touch with him. Appellant admitted in his deposition that his attorney advised him in 1979 or 1980 that there was nothing he could do. The time to object from the judgments of the prior courts has long since passed, and appellant has failed to provide a valid excuse for his delay.

Petitions for bills of review must comply with the four year statute of limitations, absent a showing of extrinsic fraud. TEX.REV.CIV.STAT.ANN. art. 5529 (Vernon 1958). *See also Ragsdale v. Ragsdale*, 520 S.W.2d 839, 844 (Tex.Civ.App.—Fort Worth 1975, no writ); *Raney v. Mack*, 504 S.W.2d 527, 532 (Tex.Civ.App.—Texarkana 1973, no writ); *Weston v. Van Meter*, 297 S.W.2d 302, 306 (Tex.Civ.App.—Texarkana 1956, no writ). Since appellant has been unable to show any extrinsic fraud on the part of appellee, we hold that Article 5529 applies and that appellant's current cause of action is barred by that statute of limitations. Appellant's first four points of error are overruled.

In his fifth point of error appellant complains that the trial court erred in granting appellee's Motion for Summary Judgment because no affidavits were attached to the motion. Rule 166–A of the Texas Rules of Civil Procedure does not require that a motion for summary judgment be based on supporting affidavits; neither does it require that affidavits be physically attached to the motion if they are used as the basis for the motion. Tex.R.Civ.P. 166–A(b), (c) and (e). Appellee based his motion on sworn depositions on file with the clerk. These provide sufficient evidence for the motion. *Remley v. Street*, 523 S.W.2d 430 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.); *Stafford v. Smith*, 458 S.W.2d 217 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ). Appellant's fifth point of error is overruled.

We find no error and affirm the judgment of the court below.